IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 406-479-4378<br><br>IN THE MATTER OF THE USE OF A CELL SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER 406-479-4378 | **M**<br>MJ 17-**31**-~~H~~-JCL<br>MJ 17-32-M-JCL<br><u>Filed Under Seal</u> |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Levi Kroschel, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

I make this affidavit in support of an application for two search warrants, and an order for a Pen Register and Trap and Trace Device as follows:

1.  I make this affidavit in support of a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 406-479-4378, with

Electronic Serial Number unknown (hereafter the "Target Cell Phone"), whose service provider is VERIZON WIRELESS, a wireless telephone service provider whose headquarters is located at 1 Verizon Way, Basking Ridge, New Jersey.

    a.    The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B, both incorporated herein by reference.

    b.    I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B – Cell Site Simulator, to determine the location of the cellular device assigned call number 406-479-4378, the (Target Cell Phone), which is described in Attachment A – Cell Site Simulator, both incorporated herein by reference.

    c.    I make this affidavit in support of an order for a "pen register" and "trap and trace device," as those terms are defined in 18 U.S.C. 3127(3) and (4). An application by an attorney for the Government will be filed contemporaneously with this affidavit, pursuant to 18 U.S.C. 3122(a)(1). This affidavit is designed to comply with the applicable pen register and trap and trace device statutes, and thus includes all the information required to be included in such an order. *See* 18 U.S.C. 3123(b)(1).

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since January 2017. I am currently assigned to the FBI Helena Resident Agency (RA) in Helena, Montana, which is part of the Salt Lake City Division of the FBI. I am a member of the FBI Montana Regional Violent Crime Task Force (MRVCTF) which specializes in targeting habitual violent offenders and dismantling violent criminal enterprises and drug trafficking organizations. During my time as a Special Agent, I have participated in several complex investigations. Prior to my employment with the FBI, I served as a police officer in Colorado for five years and I have been the affiant on numerous warrants for criminal violations in the state of Colorado.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that Chase Storlie has violated the following: U.S.C. Title 21, Section 846 Conspiracy to Distribute and Possession with Intent to Distribute Methamphetamine; U.S.C Title 21, Section 841(a) Possession with Intent to Distribute Methamphetamine; and U.S.C. Title 18, Section 2 and 924 (C) (1) (A)

Possession of a Firearm in Furtherance of a Drug Trafficking Offense. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in locating Chase Storlie.

## PROBABLE CAUSE

5.     Members of the Montana Regional Violent Crime Task Force (MRVCTF), Montana Division of Criminal Investigation (MTDCI) and the Missouri River Drug Task Force (MRDTF), conducted a long-term investigation regarding methamphetamine trafficking by Chase Storlie.

6.     From October 25, 2016, through January 9, 2017, MTDCI along with the MRDTF conducted multiple controlled drug purchases from Jeff Trask utilizing a confidential informant. The confidential informant was able to purchase methamphetamine from Jeff Trask on multiple occasions. During one of the transactions with the confidential informant, Jeff Trask mentioned to the informant that he had an AR-15 for sale and asked if the informant knew of anyone wanting to purchase the rifle.

7.     On November 11, 2017, a MTDCI undercover agent purchased the AR-15 rifle from Jeff Trask. Following the purchase of the rifle, the MTDCI undercover agent also purchased a total of four additional ounces of methamphetamine from Jeff Trask.

8.     On January 9, 2017, Jeff Trask was arrested following a controlled drug purchase with a MTDCI undercover agent. After the arrest, Jeff Trask said he

was receiving methamphetamine from Chase Storlie, who lived in Deer Lodge, Montana.

9. From January 10, 2017, through January 18, 2017, Chase Storlie provided approximately 12 ounces of methamphetamine to MTDCI through controlled drug purchases. On January 20, 2017, Chase Storlie was arrested after he attempted to deliver approximately one-half pound of methamphetamine to a confidential informant.

10. On April 26, 2017, an indictment was filed in U.S. District Court, District of Montana, Missoula, Montana, for Chase Storlie for the following violations of criminal law: Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, a violation of U.S.C. Title 21, Section 846; Possession with Intent to Distribute Methamphetamine, a violation of U.S.C Title 21, Section 841(a); Possession of a Firearm in Furtherance of a Drug Trafficking Offense, a violation of U.S.C. Title 18, Section 2 and 924 (C) (1) (A). A warrant for Chase Storlie's arrest was issued on the same day.

11. On April 28, 2017, Chase Storlie turned himself into Task Force Officer (TFO) Floyd Poteet and the United States Marshal's Service. On the same day, an order setting conditions of pre-release was signed by Chase Storlie.

12. On June 6, 2017, Chase Storlie filed a Motion to Vacate Trial and Set Change of Plea and Plea Agreement in the United States District Court for the District of Montana, Helena Division. Chase Storlie agreed to plea under a superseding indictment that was filed by the United States on June 7, 2017. An order was issued vacating the trial set for July 17, 2017, and required Chase Storlie to appear at the Paul G. Hatfield Courthouse on June 9, 2017, at 10:00 a.m. for the court to consider a change of plea.

13. On June 9, 2017, Chase Storlie failed to appear before the court as established by the order issued on June 6, 2017. A warrant was issued under case number CR-17-7-H-SEH for Chase Storlie on June 6, 2017, for failing to appear in court.

14. On June 12, 2017, TFO Floyd Poteet travelled to Chase Storlie's last known address at 701 St Mary's Street in Deer Lodge, Montana. TFO Poteet was unable to locate Storlie in Deer Lodge. TFO Poteet spoke with Chase Storlie's mother, Gina, and his girlfriend, Savanah, who he shares a child with. Savanah explained to TFO Poteet that she last saw Chase Storlie on Thursday June 8, 2017, in Butte, Montana, when they were sharing a hotel room together. Savanah saw Chase Storlie when she woke up to use the restroom. When she woke up on Friday

June 9, 2017, Chase Storlie was no longer in the hotel room. Savanah and Gina did not know Chase Storlie's current location.

15. TFO Poteet also called Chase Storlie's telephone (406-479-4378) multiple times on June 12, 2017, and did not receive an answer. Although TFO Poteet did not receive an answer, he recognized the voice on the voice mail greeting as Chase Storlie's. TFO Poteet first received Chase Storlie's phone number from Jeff Trask. After Chase Storlie began cooperating with TFO Poteet, Chase Storlie contacted him multiple times on the above listed number. TFO Poteet also exchanged text messages with Chase Storlie. The last text message was exchanged with Chase Storlie on April 28, 2017. Gina and Savanah identified 406-479-4378 as Chase Storlie's phone number and were unaware of any other phone numbers that he used.

16. On June 21, 2017, toll and subscriber information was provided for phone number 406-479-4378 from June 1 through June 12, 2017. The telephone account number showed multiple incoming and several outgoing calls from the June 1 through June 12, 2017, indicating that account was still active. The subscriber information provided by VERIZON WIRELESS indicated that the account was managed through TracFone Wireless, Inc., which is a reseller for VERIZON WIRELESS.

17. Based on FBI Special Agent Levi Kroschel's training and experience, he knows that VERIZON WIRELESS Communications can collect cell-site data about the Target Cell Phone. Such information allows VERIZON WIRELESS to identify where the Target Cell Phone is located. Such information, in turn, will allow FBI Special Agent Levi Kroschel to locate Chase Storlie as long as he remains in possession of the Target Cell Phone.

## AUTHORIZATION REQUEST – LOCATION INFORMATION FROM PROVIDER

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c), to obtain location information on the Target Cellular Device from the provider.

19. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing

investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. 3103a (b)(1). As further specified in Attachment B – Location Information, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. 3103a (b)(2). Moreover, to the extent that the warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. 3103a(b)(2).

20. I further request that the Court direct VERIZON WIRELESS to disclose to the government any information described in Attachment B that is within the possession, custody, or control of VERIZON WIRELESS. I also request that the Court direct VERIZON WIRELESS to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with VERIZON WIRELESS services, including by initiating a signal to determine the location of the Target Cell Phone on VERIZON WIRELESS Communications network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The government shall reasonably compensate VERIZON WIRELESS

Communications for reasonable expenses incurred in furnishing such facilities or assistance.

## MANNER OF EXECUTION – CELL SITE SIMULATOR

21. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

22. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that

information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

23. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will not collect information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will immediately delete that information, and law enforcement shall make no investigative use of it whatsoever other than distinguishing the Target Cellular Device from all other cellular devices.

24. The cell site simulator will only be activated in the area where the target handset is believed to be located based upon the location information obtained from the cellular provider in order to minimize the disruption to the cellular network in non-pertinent areas.

## AUTHORIZATION REQUEST – CELL SITE SIMULATOR

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

26. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2)

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

29. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

                                                      Levi Kroschel
                                                      Special Agent
                                                      Federal Bureau of Investigation

Subscribed and sworn to before me on this 23 day of June 2017.

                                                      Jeremiah C. Lynch
                                                     United States Magistrate Judge

Missoula, Montana